AO 91 (Rev. 01/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No.  15-MJ-6012 -MPK |
| Shayne Parker | ) | |
| Defendant | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of  3/22/2014  in the county of  Suffolk  in the  _____  District of  Massachusetts , the defendant violated  18  U. S. C. §  922(g)(1) , an offense described as follows:

Shayne Parker, the defendant herein, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, on March 22, 2014, did knowingly possess in and affecting commerce ammunition, to wit: 50 rounds of .380 caliber CCI rounds of ammunition. All in violation of Title 18, United States Code, Section 922(g)(1).

This criminal complaint is based on these facts:

See attached affidavit of ATF SA Mattheu P. Kelsch.

✓ Continued on the attached sheet.

_____
Complainant's signature

ATF SA Mattheu P. Kelsch
Printed name and title

Sworn to before me and signed in my presence.

Date:  3/27/15

_____
Judge's signature

City and state:  Boston, Massachusetts       M. Page Kelley, U.S. MAGISTRATE JUDGE
Printed name and title

## AFFIDAVIT OF MATTHEU P. KELSCH

I, Mattheu P. Kelsch, being first duly sworn, hereby depose and state as follows:

1. I make this affidavit in support of an application for a complaint charging **Shayne PARKER** of being a felon in possession of ammunition, in violation of Title 18, United States Code, Section 922(g)(1).

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so employed for approximately fourteen years. Previously, I served for two years as an Immigration Officer with the Immigration and Naturalization Service ("INS") in Boston, MA. I am responsible for the investigation of violations of, and the enforcement of, the federal firearms laws. I am assigned to the Boston II Field Office, a group of Special Agents who regularly work with state and local detectives in order to uncover violations of laws specifically related to firearms trafficking, firearms possession by prohibited persons, and use of firearms in furtherance of drug trafficking crimes in and around the city of Boston, Massachusetts.

3. As an ATF Special Agent, I assist in conducting investigations into the unlawful possession of firearms and ammunition. Through training, investigations and experience, I have taken part in cases relating to the trafficking of firearms, the use and possession of firearms by persons prohibited by law, and the possession of illegal firearms. I am familiar with and have participated in various methods of investigations, including, but not limited to: electronic surveillance, physical surveillance, interviewing and general questioning of witnesses, use of confidential informants, use of cooperating witnesses, use of toll records, and subscribers information. I have also debriefed confidential informants and cooperating witnesses regarding

the habits and practices of people engaged in the illegal trafficking of firearms. Furthermore, I have conducted and participated in numerous investigations to include: crime scene investigations, collection of evidence, interviews, and the execution of search warrants.

4. Through my training, experience, and interaction with experienced S/A's, Task Force Officers ("TFO's") and other investigators, I have become familiar with the methods employed by armed criminals and criminal organizations in particular, in their efforts to communicate with each other and to plot and conspire to commit violent crimes.

5. From my training and experience, I know that it is violation of Title 18, United States Code, Section 922(g)(1) for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, to possess, in or affecting commerce, a firearm or ammunition.

6. I know from having worked as an ATF Special Agent in Massachusetts for more than thirteen years that the large majority of firearms and ammunition recovered in Massachusetts crimes have been shipped or transported in interstate commerce. Additionally, I know that no modern ammunition is commercially manufactured in the Commonwealth of Massachusetts.

7. This affidavit is based upon my experience and training as a Special Agent of the ATF, my personal participation in the investigation, my review of ATF records, my review of reports prepared and maintained by local and state agencies, and information provided to me by other law enforcement officials. This affidavit is intended to show only that there is sufficient probable cause for the requested complaint and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

8.     This investigation was initiated as a result of information provided to ATF Special Agents working in the State of New Hampshire. The agents notified ATF Special Agents and Task Force Officers working in Massachusetts of an ongoing investigation into two convicted felons traveling from their state of residence (Massachusetts) to the State of New Hampshire, conspiring with others to unlawfully obtain firearms. The firearms were often traded for illegal narcotics. After the illegal straw purchases were made in New Hampshire, the two individuals would return to Massachusetts where the firearms would be transferred to them.

9.     The two individuals have been identified as:

- **Ronald "Jay" SCOTT ("SCOTT")** date of birth, XX/XX/1972. SCOTT is a forty-two year-old Black male, with a slim build, black hair and brown eyes. A criminal record check revealed that SCOTT was convicted for the felony offense of Breaking and Entering (Night) on 11/07/1998, West Roxbury District Court Docket #9706CR4474A; and

- **Shayne "Riot" PARKER ("PARKER")** date of birth, XX/XX/1974. **PARKER** is a thirty-nine year-old Black male with a stocky build, black hair and brown eyes. A criminal record check revealed that **PARKER** was convicted for the felony offenses of Distribution of Class B Controlled Substance; and a School Zone Violation on 1/27/1998, Boston Municipal Court docket #9701CR261A/B; and Assault with a Dangerous Weapon on February 25, 2005, Charlestown District Court docket #0204CR0637B.

10.    Much of the information provided to law enforcement officers in the states of New Hampshire and Massachusetts was provided by four cooperating witnesses, hereinafter referred to as "CW1",[1] "CW2", "CW3" and "CW4". I have not disclosed the identity of the

---

[1]    CW1 was arrested by the Keene Police Department in New Hampshire for possession of a narcotic drug, operating under the influence of drugs/liquor, and hunting while operating a vehicle. CW1 has a warrant issued out

CWs for the reason that he/she requested anonymity because of a concern for his/her safety and I agree with CW's that the disclosure of his/her identity would be dangerous to his/her safety. I also believe that disclosure of CW's identity would be detrimental to effective law enforcement because it would violate CW's trust and confidence and cause CW's, and any other persons familiar with CW's experience, to be uncooperative with law enforcement in the future. I know the CW's true identity, current place of residence, and place of employment.

11. On April 3, 2014, members of the ATF and the New Hampshire State Police interviewed CW1 at a residence in New Hampshire. This interview, as well as follow up interviews with CW1, CW2, CW3 and CW4 revealed the following information. CW1 stated that he/she had facilitated the "straw" purchase of between twenty and twenty-five firearms using at least three straw purchasers, to include CW2 and CW3. After obtaining the firearms, CW1 would often assist SCOTT and **PARKER** in the transportation of the firearms to Dorchester, MA or other areas of Massachusetts. CW1 identified the individuals to whom he/she transferred these firearms as "Jay,"[2] who utilizes cellular phone number 857-234-3498, and "Riot,"[3] who utilizes cellular telephone number 617-386-0286. CW1 described both SCOTT and **PARKER**, as living in the City of Boston and further stated that he/she had been to the Boston residence of SCOTT on a prior occasion. CW1 stated that SCOTT suggested that he/she facilitate the straw purchase of firearms to pay off a drug debt owed to SCOTT. Further, SCOTT provided the money for the

---

of Arkansas for Residential Burglary and Theft of Property Bond. The warrant does not request extradition. CW1 also has a history of opiate and cocaine use. CW1 is also hoping for sentencing consideration on related charges.

[2] For ease of reading this affidavit, I will refer to "Jay," as RONALD SCOTT.

[3] For ease of reading this affidavit, I will refer to "Riot," as **Shayne PARKER**.

purchase of the firearms. Prior to meeting with CW1, **PARKER** would often contact CW1 to arrange the logistics for the firearms transactions.

12. CW1 also stated that, earlier in the day on April 3, 2014, he/she utilized CW2[4] to obtain five handguns from the Alstead Gun Shop located in Alstead, NH. Both **SCOTT** and **PARKER** were waiting in the area of the Alstead Gun Shop during the purchase. CW1 was originally requested to transport the firearms to SCOTT and **PARKER** in Boston. After further discussion, the plan changed. On April 3, 2014, CW1, CW2, and an unrelated female driver met with SCOTT, **PARKER,** and an unidentified female, at the McDonald's restaurant located in Winchendon, MA. There the firearms were transferred to SCOTT and **PARKER**.

13. CW1 stated that on each occasion SCOTT and **PARKER** utilized the same vehicle, a 2000-2003 white Subaru, Legacy Sedan, bearing a Massachusetts registration. **PARKER** always drove the vehicle with SCOTT traveling in the front passenger side of the vehicle.

14. On April 4, 2014, CW1 was shown two separate photo arrays by members of law enforcement. CW1 identified the photograph of RONALD SCOTT (XX/XX/1972) as the individual known as "Jay" and identified the photograph of **Shayne PARKER** (XX/XX/1974) as the individual known as "Riot."

15. On April 4, 2014, law enforcement officers observed a Ford Mustang, bearing Massachusetts registration 654JN1, parked at 174 Fisher Avenue, Boston, MA. A query of the Massachusetts Department of Motor Vehicles showed that the car was registered to **Shayne**

---

[4] CW2 is hoping for sentencing consideration on related charges and has a history of opiate use.

**PARKER,** date of birth of XX/XX/1974. The address of 174 Fisher Avenue, Boston MA is an address associated with SCOTT. CW1 confirmed that he/she was aware that **PARKER** operated a red/orange Ford Mustang.

16. On April 4, 2014, members of law enforcement obtained records from the Alstead Gun Shop. A Report of Multiple Sale verified that CW2, identified and utilized by the CW1, acquired the following five (5) firearms on April 3, 2014:

- Chiappa, Model 1911-22, .22 caliber pistol, serial number 13G05427;
- IOI Inc., Model Hell Cat, .380 pistol, serial number X0330;
- Taurus, Model PT738, .380 pistol, serial number 34028D;
- Bersa, Model 383-A, .380 pistol, serial number 184613; and
- Iver Johnson, Model safety auto, .32 caliber revolver, serial number C49293.

Additional records from the Alstead Gun Shop and a Report of Multiple Sale verified that CW2 acquired the following three (3) firearms on March 11, 2014:

- SCCY, model CPX-1, 9mm pistol, serial number 019071;
- HiPoint, model C9, 9mm pistol, serial number P1736973; and
- Sturm Ruger, Model LCP, .380 pistol, serial number 377-09012.

17. Members of law enforcement were also able to verify other Multiple Sales transactions from other federal firearms dealers. On March 16, 2014, three (3) firearms were acquired by CW3, as described by CW1. Again on March 22, 2014, four (4) firearms were acquired by that same individual, CW3.[5] An attempted purchase was also made on March 29, 2014 by CW3; however, the transfer was delayed by the National Instant Criminal Background Check System (NICS). As such, the sale and transfer of these three guns on March 29, 2014 was never completed. All of these firearms were subsequently transferred to SCOTT and **PARKER.**

---

[5] CW3 is hoping for sentencing consideration on related charges.

18. On March 16, 2014, CW3 under the direction of CW1, traveled to the Sporting and Hunting Depot and purchased three (3) firearms. The firearms are described as follow:

- SCCY Industries, Model CPX-1, 9mm pistol, serial number 108499;
- Bersa, Model Thunder 380, .380 pistol, serial number E37927; and
- Sturm Ruger, Model P94, .40 caliber pistol, serial number 340-65249.

CW3 and CW1, driving in CW1's vehicle, met with SCOTT and **PARKER**. SCOTT and **PARKER** were operating the Mustang, registered to **PARKER** and described earlier in this affidavit. After the purchases of the firearms in New Hampshire, CW3 and CW1 drove to 233 River Street, Unit 104, in Boston, MA in CW1's vehicle. SCOTT and **PARKER** followed in **PARKER's** vehicle. The handling and the transfer of the firearms occurred at this location as explained by CW1 and CW3.

19. One other such purchase occurred on or about March 22, 2014. CW3 under the direction of the CW1, traveled to the Sporting and Hunting Depot, located in Charlestown, NH and purchased four (4) firearms. The firearms are described as follows:

- Mossberg, Model 715T, .22LR caliber rifle, serial number EMG3829517;
- Sturm Ruger, Model P345D, .45 caliber pistol, serial number 664-20920;
- SCCY Industries, Model CXP (CPX), 9mm pistol, serial number 111073; and

    (This firearm was recovered in Boston 4-2-14, discussed below. Also, a test-fire shell casing was recovered from the search of SCOTT's residence matched to this SCCY Industries 9mm pistol, serial number 111073.)

- Sturm Ruger, Model LCR, .38 caliber revolver, serial number 542-36376.

20. Later on March 22, 2014, CW3 and CW1, driving in CW1's vehicle, met with SCOTT and **PARKER**. SCOTT and **PARKER** were operating the Mustang, registered to **PARKER**. CW3 and CW1 were instructed to follow SCOTT and **PARKER** to Boston, MA. While en-route, the parties stopped at a Dick's Sporting Goods located in Keane, NH. SCOTT

and CW3 entered the store and purchased five boxes of ammunition. The video surveillance system captured CW3 and SCOTT purchasing the ammunition inside of the store and SCOTT carrying the bag of ammunition outside to the car. **PARKER** remained in the car. One of those boxes of ammunition purchased was described as Blazer .380 caliber manufactured by CCI. CW1, CW3, SCOTT and **PARKER** then proceeded to 233 River Street, Unit 104, Boston, MA where those parties and others handled the firearms and ammunition in the bedroom area. The parties were given access to 233 River Street by CW4.[6] CW3, and CW4 were present for the handling and transfer of the firearms and ammunition by **PARKER** and others and described the events to members of law enforcement.

21. Subsequent investigation revealed that Shayne **PARKER** rented rooms on March 15, 2014 and March 21, 2014 at the Keane Inn located in Keane, NH. Each of these dates preceded by one day the firearms purchases facilitated by CW1 and CW3 on March 16, 2014 and March 22, 2014. **PARKER** presented a valid Massachusetts Driver's license bearing the address 140 Wellington Hill, Apartment 5, Mattapan, MA when registering for the rooms.

22. On April 8, 2014, members of law enforcement met with CW1 and consensually searched the contents of CW1's cellular phone. It was noted that CW1 had entries for both "Jay" and "Riot" in CW1's contacts that matched the phone numbers provided to law enforcement officers. Law enforcement officers also viewed calls and text messages between CW1, "Jay" and "Riot" that discussed the firearms trafficking scheme.

23. On April 9, 2014, during evening hours, **PARKER** was located at 66 Manor

---

[6] CW4 has received sentencing consideration on related charges and has a history of cocaine use. CW4 also has a criminal record that includes convictions for assault and battery, possession of cocaine, shoplifting and receiving stolen property.

Street, Dorchester, MA. The 1997 Ford Mustang, bearing Massachusetts registration 654JN1, and registered to **PARKER**, was observed parked in front of the residence.

24. On April 10, 2014, in the early morning, surveillance was conducted at 66 Manor Street. At approximately 10:10 a.m., law enforcement officers observed **PARKER** exit the residence and enter the Ford Mustang. **PARKER** then departed the area. On April 10, 2014 at approximately 1:20 p.m., the Ford Mustang was observed parked outside of 233 River Street.

25. On April 11, 2014, in the early morning, surveillance was conducted at 66 Manor Street. At approximately 1:40 p.m., law enforcement officers observed **PARKER** exit 66 Manor Street, enter the Ford Mustang, and depart the area.

26. On April 12, 2013, in the early morning, surveillance was conducted at 66 Manor Street. At approximately 3:55 p.m., law enforcement officers observed **PARKER** exit 66 Manor Street, enter the Ford Mustang, and depart the area.

27. On April 10, 2014, in the early morning, surveillance was conducted at 233 River Street. At approximately 9:25 a.m., law enforcement officers observed a black female, known to law enforcement officers, enter a 2002 white Subaru Legacy Sedan bearing Massachusetts registration 936ZK8 parked behind 227 River Street. (It should be noted that this vehicle matched the description given by the CW1 of the vehicle utilized by SCOTT and **PARKER** during the firearms and narcotics transactions). SCOTT later entered the passenger side of the vehicle. The vehicle then departed the area. At approximately 11:45 a.m., the Subaru Legacy returned and parked in front of 233 River Street. Both the female and SCOTT exited the vehicle and entered 233 River Street, Apartment 104. At approximately 12:26 p.m., the female and then SCOTT exited 233 River Street, Apartment 104, entered the Subaru Legacy, and departed the area.

28. On April 11, 2014, surveillance was conducted at 233 River Street. At approximately 12:26 p.m., the Subaru Legacy, operated by SCOTT, arrived and parked at the rear of 227 River Street. SCOTT, and another male, then entered 233 River Street, Apartment 104. At approximately 12:46 p.m., SCOTT and CW4 exited Apartment 104 and entered the Subaru Legacy, with SCOTT operating the vehicle. The vehicle then departed the area.

29. On April 12, 2014, surveillance was conducted at 233 River Street. At approximately 9:20 a.m., a green Nissan Altima entered the parking lot in the area of 233 River Street. SCOTT was a passenger in the vehicle. The vehicle traveled behind 233 River Street. A male and female then entered and operated the Subaru Legacy. The Subaru Legacy then followed the Nissan Altima out of the housing complex. At approximately 2:22 p.m., the Nissan Altima sedan parked in front of 233 River Street. SCOTT and two other males exited the vehicle and entered 233 River Street, Apartment 104.

30. On April 13, 2014, CW1 engaged in a telephone conversation with SCOTT. CW1, acting under the direction of law enforcement officers, informed SCOTT that he/she was in possession of three 9 millimeter handguns. SCOTT stated that he would meet CW1 in New Hampshire in the afternoon of the following day (April 14, 2014). SCOTT informed CW1 that he would bring five (5) grams of crack cocaine to exchange for the pistols, as well as two (2) grams of crack cocaine, two (2) grams of heroin, and one hundred dollars cash as payment for the CW1 for facilitating the transaction.

31. On April 14, 2014, as part of a controlled law enforcement operation, SCOTT and **PARKER** traveled to New Hampshire to meet with CW1. SCOTT and **PARKER** were under the belief that they would trading cash and illegal narcotics for a number of firearms. SCOTT and **PARKER** made the trip to New Hampshire in the Ford Mustang.

32. SCOTT and **PARKER** were subsequently arrested by ATF. Law enforcement seized approximately 14 grams of a white substance, which field tested positive for crack cocaine, from SCOTT which was stashed underneath his scrotum. The crack cocaine was packaged in two baggies. One baggie contained 18 individual baggies containing crack cocaine and the second baggie contained 6 individual baggies containing crack cocaine.

33. On April 14, 2014, a federal search warrant was executed at 233 River Street, Unit 104, in Boston, MA.[7] Among the items seized were a Ruger firearm, a box containing 50 rounds of Blazer .380 caliber ammunition, manufactured by CCI, and a portion of the receipt from Dick's Sporting Goods from the March 22, 2014 transaction. The SKU # on the CCI .380 caliber ammunition box recovered during the search matched that of one of the boxes of ammunition purchased at the Dick's Sporting Goods store. A spent 9mm test-fire shell casing was also recovered. The shell casing also had a label describing that it was from the SCCY, CPX-1 firearm, with serial number 111073, that was purchased by CW3 on March 22, 2014 and transported to Boston, as described above.[8]

34. Subsequent laboratory testing conducted on ballistics evidence recovered during the execution of the search warrant at 233 River Street, Unit 104, by the Boston Police Latent Print Unit. The examination by a certified and trained fingerprint examiner determined that a fingerprint matching the right index finger of **Shayne PARKER** was recovered from the inner tray of the CCI Blazer .380 caliber ammunition package that contained 50 rounds of ammunition.

---

[7] ATF also executed a search warrant at **PARKER's** residence located at 66 Manor Street, Dorchester, MA with negative results.

[8] New firearms often are sold in a box with other items including a spent shell casing that had been test fired in the weapon.

35. On April 2, 2014 (eleven days after it was transported from New Hampshire to Boston), the SCCY Industries, Model CXP (CPX), 9mm pistol, serial number 111073 was recovered in Boston. In particular, the SCCY 9mm was recovered by police officers in the area of Morse Street and Washington Street. The make, model, serial number, and caliber of the pistol matched that of the packaged test fire shell casing recovered from 233 River Street Boston, MA.

36. On April 18, 2014, a HiPoint, model C9, 9mm pistol bearing serial number P1736973 was recovered in the City of Boston. This firearm was traced and determined to be one of the three firearms purchased by CW2 on March 11, 2014 and transported to Boston for SCOTT and **PARKER**, and described early in this affidavit.

37. The fifty (50) rounds of ammunition were examined by me, and I determined that it was ammunition within the meaning of federal law. Additionally, I examined the ammunition and determined that it was manufactured outside of Massachusetts and therefore traveled in interstate or international commerce prior to its recovery.

## CONCLUSION

38. I submit that this affidavit supports probable cause that Shayne **PARKER** committed the offense of being a felon in possession of ammunition, in violation of Title 18, United States Code, Section 922(g)(1).

I declare that the foregoing is true and correct.

_____
Mattheu P. Kelsch
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me this 27th day of March, 2015:

_____
M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE