# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|                              |   |                       |
|------------------------------|---|-----------------------|
| SHAYNE PARKER,               | ) |                       |
|                              | ) |                       |
|    Petitioner,| ) |                       |
|                              | ) | **Criminal Action No.** |
| v.                           | ) | **15-10221-FDS**      |
|                              | ) |                       |
| UNITED STATES OF AMERICA,    | ) |                       |
|                              | ) |                       |
|    Respondent.| ) |                       |

## MEMORANDUM AND ORDER
## ON PETITION FOR A WRIT OF HABEAS CORPUS

**SAYLOR, J.**

This is a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. On March 18, 2018, the jury found petitioner Shayne Parker guilty of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g), and transporting a firearm across state lines without a license in violation of 18 U.S.C. § 922(a)(3). He was sentenced to a 60-month term of incarceration followed by a three-year term of supervised release.

Petitioner has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel in violation of the Sixth Amendment. The petition is based on trial counsel's alleged (1) failure to raise an Equal Protection Clause challenge based on the Court's denial of individual voir dire, and (2) failure to object to evidence admitted under Fed. R. Evid. 404(b). For the reasons set forth below, the motion will be denied.

I.  **Background**

   A.  **Factual Background**

The following facts are taken from the opinion of the Court of Appeals.

On March 21, 2014, Shayne Parker drove with Ronald Scott, a drug dealer, from Massachusetts to New Hampshire and checked into the Keene Inn in Keene, New Hampshire. *United States v. Parker*, 872 F.3d 1, 3 (1st Cir. 2017). The room was registered in Parker's name. *Id.* Parker and Scott met with Mitchell Riddell, one of Scott's customers. *Id.* In Parker's presence, Riddell talked to Scott about buying guns. *Id.*

The next day, March 22, Parker, Scott, and Riddell met again and were joined by Melanie LaMott. *Id.* LaMott could legally buy firearms in New Hampshire and had agreed with Riddell to act as a straw buyer. *Id.* Parker, Scott, Riddell, and LaMott first went to the Alstead Gun Shop in Alstead, New Hampshire, but left before purchasing anything because Scott became uncomfortable with someone in the shop. *Id.* at 3-4. Next, they went to the Sporting and Hunting Depot in Charlestown, New Hampshire, where LaMott bought several firearms. *Id.* at 4. After the purchase, they went to LaMott's apartment in Keene where Scott gave Riddell and LaMott crack cocaine as partial payment for their services. *Id.* On their way to Boston, the four stopped at Dick's Sporting Goods in Keene where Scott and LaMott bought ammunition. *Id.* Once in Boston, Parker and Scott examined the firearms and ammunition and paid Riddell and LaMott. *Id.* Parker was subsequently arrested. *Id.*

On March 18, 2016, a jury convicted Parker of two counts: (1) being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g); and (2) transporting a firearm across state lines without a license in violation of 18 U.S.C. § 922(a)(3). Parker was sentenced to 60-month terms of imprisonment on both counts, to be served concurrently, followed by a

three-year term of supervised release.

## 1. **Individual Voir Dire**

Prior to trial, petitioner's counsel moved for the Court to conduct individual voir dire of prospective jurors to determine if any of the jurors "harbor any racial prejudice." Petitioner's counsel requested that the Court ask five questions:

1. Do you have any feelings or opinions about black people that would cause you to question your ability to be impartial in evaluating the evidence in this case?

2. Would the fact that Mr. Parker is a black man make it more difficult for you to decide a verdict in his favor than if he were white?

3. Do you believe that black men are more likely to commit a crime than others?

4. Have you had any experiences with black people that might make you unable to be fair and impartial in this case?

5. Can you honestly assure the court that the race of the defendant will not affect your ability to be fair and impartial?

*Parker*, 872 F.3d at 4-5. (Docket No. 72). At the final pretrial conference, petitioner's counsel explained why he was requesting individualized voir dire. He stated:

> Well, my client is an African-American man, and I've requested a series of questions regarding racial prejudice. And I think that it's very important, in order for Mr. Parker to get a fair trial, that the jurors do not harbor any prejudice against him based on race. And I don't believe that we can realistically expect jurors to respond in the audience in front of all of their other prospective jurors to questions about whether they are biased or prejudiced against people based on their race. And I think, especially in a case like this where he's charged with firearms offenses and where that plays into a stereotype, frankly, that it's very important that the jurors, at least on that limited issue, be voir dired individually so that we can make sure that we don't end up with jurors who are – come into the process predisposed to find Mr. Parker guilty based on his race.
>
> Just one other factor, just to make the record complete. I believe there – basically, this case involves an allegation that my client and another individual went to the state of New Hampshire and recruited people to purchase firearms from gun stores. And, again, there's a cross-racial component to that. So I think the witnesses that are going to be called by the Government, I haven't met them, but I

3

believe that they're Caucasian. And they're going to be testifying that they were recruited into purchasing firearms primarily by this other individual named Scott.

(Final Pretrial Conf. Tr. at 8, 10). At a status conference, the Court denied the individual voir dire request, stating the following:

> This is a relatively routine case; [it's] not a death penalty case, not a murder case, not a highly publicized case. There's no racial angle to it that I can see, like a victim and a perpetrator being of different races. Nothing about it particularly will evoke a strong emotional response or a racially charged response, and I see no reason to take the highly unusual and time-consuming and resource-consuming step of individual voir dire.

(Motion Hearing Tr. at 2-3).

On the first day of trial, petitioner's counsel requested reconsideration of the denial of individualized voir dire. He contended:

> Well, your Honor, the first thing I would say is this: We have an extremely racially polarized society, and there is systemic racism. Those are pretty undeniable facts, and as far as my client, Shayne Parker, [who is] African-American[,] getting a fair trial, we don't want jurors who have bias and prejudice.

(Trial Tr. (Mar. 14, 2016) at 4). The Court denied the request for reconsideration, explaining:

> All right. I am going to deny the request for reconsideration . . . . [W]hen I described it as a relatively routine case, of course, I'm describing that from the standpoint of the system, not from the standpoint of the defendant.
>
> Of course, it's a critical[] case to him. One of my jobs [–] my most important job [–] is to ensure that the defendant has a fair trial. I do not believe that individualized voir dire is necessary or appropriate to ensure a fair trial or even close to it.
>
> I think your description of the potential for racial bias is exaggerated to a considerable degree, and I am going to stand by my earlier ruling, and I will not conduct individualized voir dire.

(*Id.* at 6). At sidebar, the Court asked petitioner's counsel "[o]ther than individualized voir dire, is there any particular question you want me to ask that I have not asked to the

4

group?" (*Id.* at 84). Petitioner's counsel requested that the Court ask the group two questions:

1. [W]hether they've had experience with people of my client's race that would affect their ability to be fair and impartial, and

2. [W]hether they can honestly assure the Court.

(*Id.* at 85). The Court granted petitioner's counsel's request and proceeded to ask the potential jurors these two questions.

The Court of Appeals held that the Court did not abuse its discretion by not conducting individual voir dire. *Parker*, 872 F.3d at 9.

### 2. **Other-Acts Evidence**

Before the trial, the government submitted a motion *in limine* to introduce evidence at trial of firearms and ammunition purchases beyond those included in the indictment. Specifically, the government moved to introduce evidence of other purchases of firearms and ammunition involving Parker that occurred before the events of March 22, 2014, because the purchases were completed in "an almost identical manner through the role of straw purchasers" and Parker "always had the same role in the scheme." (Docket No. 77 at 12). The government offered the evidence to show Parker's "knowledge and intent to transport and receive the firearms in the state of Massachusetts," and contended that the evidence's "probative value outweigh[ed] any prejudice to the defendant." (*Id.* at 1, 15).

Petitioner's counsel moved to exclude that evidence, contending it was "not direct evidence, but rather impermissible character evidence and any probative value [was] substantially outweighed by the risk of unfair prejudice." (*Id.* at 1). Counsel further contended that the evidence was not admissible under Fed. R. Evid. 404(b) and 403. During the pretrial conference, counsel again objected to "any evidence being admitted other than the serious crimes

5

that [Parker was] charged with." (Final Pretrial Conf. Tr. at 28). Counsel contended that "admitting this other evidence . . . [wouldn't] aid the jury in deciding the case but [would] severely prejudice Mr. Parker's right to a fair trial." (*Id.*) The Court overruled the objection, and ruled that the government could introduce the uncharged firearm evidence in a "reasonably circumscribed" manner "in terms of the amount of time and the level of detail." (Trail Tr. (March 14, 2016) at 7).

At trial, the government proceeded to introduce evidence that Parker and Scott used straw purchasers to buy multiple firearms on March 10, 16, and 22, 2014. *Parker*, 872 F.3d at 9. Petitioner's counsel again objected. The Court instructed the jury regarding the permissible purposes of the other-acts evidence at least three times. For example, the Court instructed:

> I'm permitting you to hear evidence of the March 10th and March 16th transactions for the purpose of permitting you to evaluate that evidence for whatever weight you choose to give it in considering [Parker's] intent, motive, knowledge, whether he had a particular plan, but, again, this is not charged conduct . . . [Y]ou must take special care to ensure that you do not consider this evidence as evidence that [Parker] has a bad character or somehow is a bad person, and, therefore, committed the crime. You must evaluate the charged crime[s] according to their own evidence and not because of whatever character [Parker] does or does not have.

(Trial Tr. (Mar. 15, 2016) at 60-61). At another point the Court instructed:

> [A]nother way of framing . . . the same concept is you may not conclude that [Parker] had a propensity to commit a crime and, therefore, committed the crime, that he acted in accordance with bad character, so to speak.

(*Id.* at 61-62). In the final jury charge, the Court instructed:

> You've heard evidence that [Parker] may have committed acts similar to those charged in this case on one or more different occasions. You may consider that evidence only for the limited purposes of deciding:
>
> - whether [Parker] had the necessary intent, knowledge, or state of mind to commit the crimes charged in the indictment;

6

- whether [Parker] had a motive or opportunity to commit the crimes charged; or

- whether [Parker] acted according to a plan to commit the crimes charged.

(Trial Tr. (Mar. 18, 2016) at 152-53).

### B. Procedural Background

As noted, Parker was convicted and sentenced to a term of imprisonment. In 2017, the Court of Appeals affirmed the conviction, "[c]oncluding that none of [Parker's] challenges [rose] to the level of reversible error." *Parker*, 872 F.3d at 3. Parker then petitioned for a writ of certiorari to the Supreme Court, which denied the petition.

On May 2, 2018, Parker filed the present motion to vacate under 28 U.S.C. § 2255, claiming ineffective assistance of counsel.

## II. Analysis

Because petitioner appears *pro se*, his pleadings must be construed more leniently than those drafted by an attorney. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, a petitioner's *pro se* status does not excuse him from complying with procedural and substantive requirements of the law. *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).

### A. 28 U.S.C. § 2255

Under 28 U.S.C. § 2255, a petitioner may file a motion to vacate, set aside, or correct a sentence. The relief requested may be granted on the grounds that the "petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). Petitioner bears the burden of establishing that he is entitled to relief under § 2255. *Id.*

## 1. **Ineffective Assistance of Counsel**

Petitioner contends that his counsel rendered ineffective assistance in violation of the Sixth Amendment on two grounds: (1) failure to raise an Equal Protection Clause challenge based on the voir dire proceedings, and (2) failure to object to evidence admitted under Fed. R. Evid. 404(b). In order to establish a claim of ineffective assistance of counsel, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *United States v. De La Cruz*, 514 F.3d 121, 140 (1st Cir. 2008) (citations omitted). The Constitution does not guarantee to any defendant a "perfect defense or a successful defense." *See Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012) (citations omitted). Rather, "the performance standard is that of reasonably effective assistance under the circumstances then obtaining." *United States v. Natanel*, 938 F.2d 302, 309-10 (1st Cir. 1991) (citing *Strickland*, 466 U.S. at 687-88).

There are two elements to an ineffective assistance of counsel claim: (1) deficient performance by counsel and (2) resulting prejudice. *Peralta v. United States*, 597 F.3d 74, 79 (1st Cir. 2010) (citing *Strickland*, 466 U.S. at 687). An insufficient showing on either prong will defeat such a claim. *See, e.g.*, *Malone v. Clarke*, 536 F.3d 54, 64 (1st Cir. 2008).

To show deficient performance, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. Counsel's performance is to be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). That

evaluation must be highly deferential. *Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Counsel is given tremendous deference concerning trial strategy. *Id.* ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). A claim that counsel failed to object in the specific manner that the client desired does not defeat the strong presumption that counsel's conduct "falls within the wide range of reasonable professional assistance," and that the way counsel objected "might be considered sound trial strategy." *Id.*

To show resulting prejudice, a petitioner must show that, but for counsel's error, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" *Dugas v. Coplan*, 506 F.3d 1, 9 (1st Cir. 2007) (citations omitted). "An error by counsel, even if professionally unreasonable, does not warrant setting aside judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

The court need not address both components of the inquiry if the petitioner makes an insufficient showing on one. *Id.* at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* In addition, "when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's [criminal proceedings], the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

### a.     Ground 1—Individual Voir Dire

Petitioner first contends that his counsel rendered ineffective assistance because he failed to raise "an equal protection clause violation in the Court's ruling that this case was somehow less that [sic] a capital case." In other words, petitioner appears to allege that it was unreasonable for his attorney to not raise a challenge under the Equal Protection Clause to the Court's denial of his request to conduct individual voir dire to determine possible racial prejudice. For the reasons set forth below, that argument is without merit.

The Sixth Amendment and the Due Process Clause of the Fourteenth Amendment (not the Equal Protection Clause) guarantee a criminal defendant the right to an impartial jury. *Ristaino v. Ross*, 424 U.S. 589, 595 n.6 (1976). Even if petitioner intended to bring a Due Process Clause challenge, however, his claim would still be without merit.

To begin, petitioner's counsel did, in fact, object to the denial of individualized voir dire on the basis of ensuring an impartial jury and a fair trial for his client. Counsel requested individualized voir dire to ascertain potential racial prejudice at the final pretrial conference and again on the first day of trial.

In non-capital cases, judges are generally not required to conduct voir dire to identify racial basis, even when the defendant and alleged victim are of different races. *See Ristaino*, 424 U.S. at 598 n.9 ("Although we hold that voir dire questioning directed to racial prejudice was not constitutionally required . . ." by the "mere fact" that the defendant is black and the alleged victim is white, "the wiser course generally is to propound appropriate questions designed to identify racial prejudice if requested by the defendant."). Such voir dire in a non-capital case is only constitutionally required when race is "inextricably bound up with the conduct of the trial". *Id.* at 597, 598 n.9. In contrast, in capital cases, the "defendant accused of an interracial crime is

entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias." *Turner v. Murray*, 476 U.S. 28, 36-37 (1986).

Petitioner's case was not a capital case. Nor was the defendant accused of an interracial crime. *See Ristaino*, 424 U.S. at 597-98. Furthermore, as the Court found, the case was not "inextricably bound up with" race. For those reasons, the Court was not constitutionally required to conduct voir dire on racial prejudice at all, much less individual voir dire. *See Ristaino*, 424 U.S. at 598; *cf. Turner*, 476 U.S. at 36-37.

Because the Court was not constitutionally required to conduct individual voir dire, it was not unreasonable for counsel to fail to raise an Equal Protection challenge after counsel's request for individual voir dire was denied. The objection would have been without merit, as the right to an impartial jury is guaranteed by the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. *See Ristaino*, 424 U.S. at 595 n.6. Furthermore, petitioner's counsel twice objected to the denial of individualized voir dire, first at the final pretrial conference, and again on the first day of trial. The Court considered counsel's arguments and denied the requests. Framing those objections as Equal Protection objections would have made no difference to the outcome. Accordingly, because petitioner has not shown that his counsel's failure to make such an objection fell below "reasonable professional assistance," he has not met his burden under the performance prong of *Strickland*. *See* 466 U.S. at 689.

Although the Court need not reach the prejudice prong of *Strickland*, petitioner has also failed to show that counsel's conduct prejudiced him. *See id.* at 691. Even if petitioner had shown that counsel's failure to make the objection was objectively unreasonable, he has not provided any evidence to show he was prejudiced by it. Petitioner stated that "[t]his is clearly an equal protection clause violation and as such counsel for petition[er] provided ineffective

11

assistance of counsel by first not raising an equal protection clause violation at the District Court," but failed to address what prejudice, if any, resulted from his counsel's alleged ineffectiveness. (Docket No. 144, Petition at 4). Petitioner has therefore failed to meet his burden under the second prong of *Strickland*.

In summary, petitioner has failed to show that counsel's failure to raise an Equal Protection challenge to the denial of individual voir dire constituted ineffective assistance.

### b. Ground 2—Other-Acts Evidence

Petitioner next contends that he received ineffective assistance because his counsel failed to "raise and argue a relevance-based argument as to the uncharged crime evidence." The most favorable reading of petitioner's claim is that his attorney failed to object to admission of evidence of uncharged firearm and ammunition purchases under Fed. R. Evid. 404(b). For the reasons set forth below, that argument is entirely without merit.

Petitioner's attorney did, in fact, object to the government's evidence of uncharged firearm purchases. In a motion in *limine*, counsel contended that the evidence was inadmissible under Rule 404(b) as improper propensity evidence that "would invite the jury to speculate that if Mr. Parker participated in these other transactions then he must have participated in the transaction for which he is being charged." (Docket No. 78 at 4). Petitioner's counsel further contended that the evidence should be excluded under Rule 403 because the evidence "would result in the majority of the trial being taken up by the presentation of offenses for which Mr. Parker has not been indicted and for which Mr. Parker is not on trial." (*Id.* at 5). Petitioner's counsel again objected to the evidence at the final pretrial conference, contending that "the prejudicial effect [of introducing the evidence] is overwhelming and the probative value is minimal." (Final Pretrial Conf. Tr. at 30).

12

Furthermore, in response to counsel's objections, the Court instructed the jury at least three times on how to consider the past-acts evidence. For example, at the close of evidence, the Court instructed that the past-acts evidence could be considered only for the purpose of determining whether Parker had the intent, knowledge, state of mind, motive, opportunity, or plan to commit the crimes charged. The Court told the jury it "may not conclude that [Parker] had a propensity to commit a crime." (Trial Tr. (Mar. 15, 2016) at 61-62).

Because petitioner's attorney in fact objected to the evidence in an opposition to the motion *in limine* and again at the final pretrial conference, petitioner has failed to show that his counsel's performance was objectively unreasonable under *Strickland*'s first prong. *See Strickland*, 466 U.S. at 698-99.

This Court need not reach the prejudice prong of *Strickland*. Nonetheless, petitioner has also failed to demonstrate how he was prejudiced. Even if counsel's manner of objecting to the past-acts evidence was somehow unreasonable, the petition does not allege petitioner suffered any prejudice as a result. His petition simply states that "[a]ttorney for petitioner never agued its relevance to the District Court and got the issued waived for lack of development." (Docket No. 144 at 6). That is not enough to establish prejudice under *Strickland*'s second prong.[1]

In summary, petitioner has failed to establish that counsel's alleged failure to object to the uncharged firearm and ammunition-purchases evidence constituted ineffective assistance.

## III. Conclusion

Accordingly, for the reasons set forth above, petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2255 is DENIED.

---

[1] As noted, the Court of Appeals held that the Court did not abuse its discretion by admitting the past-acts evidence.

**So Ordered.**

                                                  /s/ F. Dennis Saylor
                                                F. Dennis Saylor IV
Dated: November 5, 2018                 United States District Judge